# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### HARRISONBURG DIVISION

|   |   |   |
|---|---|---|
| CURTIS W. HICKS, | ) | Case No. 5:09cv00045 |
| *Plaintiff* | ) | REPORT AND |
| v. | ) | RECOMMENDATION |
| MICHAEL J. ASTRUE, | ) | By: Hon. James G. Welsh |
| Commissioner of Social Security, | ) | U. S. Magistrate Judge |
| *Defendant* | ) | |

The plaintiff, Cutis W. Hicks, brings this action pursuant to 42 U.S.C. § 405(g) challenging the final decision of the Commissioner of the Social Security Administration ('the agency") denying his claims for a period of disability insurance benefits ("DIB") and for supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, as amended ("the Act"). 42 U.S.C. §§ 416 and 423 and 42 U.S.C. §§ 1381 *et seq.*, respectively. Jurisdiction of the court is pursuant to 42 U.S.C. § 405(g). The Commissioner's Answer was filed on October 26, 2009 along with a certified copy of the administrative record ("R.") containing the evidentiary basis for the findings and conclusions set forth in the Commissioner's final decision. Both parties have moved for summary judgment and filed supporting memoranda. By order of referral entered October 28, 2009 this case is now before the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.    Summary Recommendation**

At the time of the administrative hearing, the plaintiff was effectively fifty years of age [1] with a tenth grade education [2] and a vocational history which included farming [3] and dock work as a materials handler. [4] (R.121,126,132,134,144,162,182.) In his appeal the plaintiff contends that the administrative law judge ("ALJ") erred by concluding that he was not disabled despite the limiting effects of multiple claimed physical and mental problems, including fibromyalgia, arthritis in his hands and feet, bone spurs, chronic fatigue , major depressive disorder, chronic pain and the residual limiting effects of an earlier cervical fusion. (R.36,41-43,125,133.) In his reply the Commissioner argues that substantial evidence supports the administrative conclusion that the plaintiff retains the functional ability to perform a limited range of light work which exists in significant numbers in the national economy. Each party has moved for summary judgment; no written request was made for oral argument, [5] and the case is now before the undersigned for a report and recommended disposition.

---

[1] At this age the plaintiff is classified as a "*person closely approaching advanced age*." If a person is closely approaching advanced age (age 50-54), the agency we will consider the individual's age along with any severe impairment(s) and any limited work experience which may seriously affect the individual's ability to adjust to other work. 20 C.F.R. §§ 404.1563(d) and 416.920(c).

[2] Pursuant to the agency's regulations a 7th grade through the 11th grade of formal education has a *limited education*, meaning an ability in reasoning, arithmetic and language skills, but not enough to allow an individual to do most of the complex job duties needed in semi-skilled or skilled jobs. 20 C.F.R. §§ 404.1564(b)(3) and 416.920(c).

[3] As performed by the plaintiff, this work was classified by the vocational witness as exertionally heavy and skilled. (R.52.)

[4] As normally performed and as performed by the plaintiff, this work was classified by the vocational witness as exertionally heavy and semi-skilled. (R.52.)

[5] Paragraph 2 of the court's Standing Order No. 2005-2 requires that the plaintiff in a Social Security case must request oral argument in writing at the time his or her brief is filed.

Based on a thorough review of the administrative record and for the reasons herein set forth, it is recommended that the plaintiff's motion for summary judgment be denied, the Commissioner's motion for summary judgment be granted, and an appropriate final judgment be entered affirming the Commissioner's decision denying benefits.

**II.     Standard of Review**

The court's review in this case is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that the plaintiff failed to meet the statutory conditions for entitlement to a period of DIB or to SSI between his alleged disability onset date (August 16, 2006) and the date of the Commissioner's final decision (December 24, 2008). "Under the . . . Act, [a reviewing court] must uphold the factual findings of the [Commissioner], if they are supported by substantial evidence and were reached through application of the correct legal standard." *Mastro v. Apfel,* 270 F.3d 171, 174 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). This standard of review is more deferential than *de novo*. "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Mastro,* 270 F.3d at 176 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Id*. (quoting *Craig v. Chater,* 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.3d 396, 397 (4th Cir. 1974). The Commissioner's

conclusions of law are, however, not subject to the same deferential standard and are subject to plenary review. *See Island Creek Coal Company v. Compton*, 211 F.3d 203, 208 (4th Cir. 2000); 42 U.S.C. § 405(g).

III.   **Case History and Evidence**

The plaintiff protectively filed his applications on November 30, 2006 alleging an August 16, 2006 onset date. (R.10,121.) His applications were administratively denied, both initially and on reconsideration, and following his timely request a hearing was held before an administrative law judge ("ALJ") on November 18, 2008. (R.10,30-73,76-80,86-97,105-115,121.) The plaintiff was present, testified, and was represented by counsel. (R.10,30-50,74-75.) Also present was Andrew Beale, Ph.D., who testified as a vocational witness. (R.10,50-54,100-103.)

In denying the plaintiff's claim, the ALJ followed the agency's sequential decision-making process [6] and concluded at the final decisional step that the plaintiff had not been under a disability as defined in the Act between his alleged onset date of August 16, 2006 and the date of the ALJ's decision. (R.22-23.) Contending that the combined effects of his physical and mental impairments

---

[6] To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider: whether the claimant (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of impairments found at 20 C.F.R. Part 4, Subpt. P, Appx. 1; (4) has an impairment which prevents past relevant work; and (5) has an impairment which prevents him from doing substantial gainful employment. 20 C.F.R. § 404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. §.404.1503(a); *Hall v. Harris,* 658 F.2d 260 (4th Cir. 1981).

4

were disabling, the plaintiff unsuccessfully sought Appeals Council review. (R.1-5.) The decision of the ALJ, therefore, now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981.

Seeking treatment at various times for depression, stress, tension, memory loss, nervousness, daytime fatigue, and a variety of muscle and joint pains, the plaintiff's medical records show that since June 2006 he has been seen and treated by a number of health care providers. The earliest of these records shows that he was seen at Rockingham Memorial Hospital ("RMH") in June 2006; a diagnosis of major depressive disorder, moderate and recurrent, was made, and he was started on Effexor (an anti-depressant). (R.245-251.)

On July 27, 2006, three weeks before his alleged disability onset date, the plaintiff was seen on referral for an initial evaluation at Valley Behavioral Medicine (a part of RMH). (R.281-293.) At that time it was reported that his mental health issues were being followed by the Community Services Board of Harrisonburg, and he was in weekly counseling. (R.281-282.) By history he reported complaints of irritability, non-restful sleep, racing thoughts, poor focus, and stiffness all over [his] body." (R.281.) On examination he was found to exhibit an "appropriate" affect, logical and coherent thoughts, an "OK" mood, an "intact" abstracting ability, "fair" judgment, and "average" intellectual functioning. (R.285.) The prior clinical diagnosis was confirmed, and his medication regime was revised to add the use of Clonazepam. (R.286,288.) Through Valley Behavioral Health, over the ensuing seven months, the plaintiff's medications were thereafter periodically refilled without change. (R.272-278,292-293.)

Based on a comprehensive psychological evaluation on August 28, 2006, Audie Gaddis, PhD, also concluded that the plaintiff suffered from a non-psychotic, moderate and recurrent, major depressive disorder. (R.202-208.) In Dr. Gaddis' opinion the plaintiff exhibited both dependent and avoidant personality traits, and at the time was functioning at a level of 55 on the GAF scale. [7] (R.203,207.) He recommended that the plaintiff be continued on his current anti-depressant medication; he suggested that the plaintiff would benefit from regular counseling in order to address the triggers of his depression and to increase his awareness of his personality issues, and he referred the plaintiff to Sandra Harris, a mental health nurse practitioner, for treatment of these issues. (R.207,245.)

By letter dated July 14, 2008, some two years later, Lois Horne, LPC, advises that she started "providing individual counseling" to the plaintiff on March 21, 2008, that he had been cooperative and prompt in his attendance, and that he was working "to address coping with stress, past and present." (R.343.)

Less than two weeks before Dr. Gaddis' psychological evaluation, in early August 2006 the plaintiff separately sought medical care by Gene Yoder, MD. (R.214,254-255,257.) At the time of this initial office visit, the plaintiff was complaining primarily of experiencing a long-term problem with diffuse pain and stiffness; he also reported ongoing somatic difficulties and depression, and he

---

[7] The Global Assessment of functioning ("GAF") is a numeric scale which ranges from zero to 100 and is used by mental health clinicians and doctors to represent a judgment of an adult individual's overall level of "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders Fourth Edition, ("DSM-IV"), 32 (American Psychiatric Association 1994). A specific GAF score represents a clinician's judgment of an individual's overall level of functioning, and a GAF of 51-60 indicates "[m]oderate symptoms (*e.g*., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (*e.g*., few friends, conflict with peers or co-workers)." DSM-IV at 32.

gave a history of having undergone multi-level cervical disc surgery some years in the past, which had not been totally successful. (R.252,254.) On examination, Dr. Yoder found the plaintiff to be alert, oriented, in no acute distress, and to exhibit no physical abnormality other than some tenderness over the lumbar paraspinal muscles and a small effusion over both knees. (254-255,257.) Somewhat inconsistent with the results of normal follow-up laboratory studies, a cervical spine X-ray that demonstrated only "mild degenerative disc disease," and an unchanged physical condition at the time of follow-up office visits in October and November 2006, Dr. Yoder nevertheless concluded that the plaintiff suffered from a "chronic pain syndrome," that he should not be lifting due to an identified fracture of one of the cervical compression plate screws, and that he "may well be completely disabled." (R.210,213,215-217,238-244,254-262,318-322.)

The plaintiff's medical records additionally show that he sought treatment through the emergency room at Rockingham Memorial Hospital on January 10, 2007 for a cough and what he thought to be possibly pneumonia. (R.218-227,228-237.) Although diagnosed with acute left lower lobe pneumonia, the plaintiff refused to undergo any relevant cardiac or pulmonary diagnostic X-ray and laboratory studies. (R.220,230.) At his request, therefore, he was given a prescription for antibiotics and permitted to go home. (*Id.*)

Several days later the plaintiff saw Dr. Yoder for treatment of his continuing nasal and chest congestion. (R.259,318.) Although he reported having not had the RMH antibiotic prescription filled, he was found to have no fever and no pleural congestion. (*Id.*)

Two months later, in March, when the plaintiff next saw Dr. Yoder, he presented with a list of continuing problems, including loss of memory, difficulty urinating, stress, tension, muscle spasms, arthritis in his hands and fingers, "spurs" on his spine, extreme pain on twisting his spine, deterioration of his knee, increasing pain throughout the day, and an inability to stand longer than 20-30 minutes. (R/317,324.) On examination, Dr. Yoder found the plaintiff to exhibit significant limitation in his cervical spine range of motion, some attendant bilateral limitation in his range of shoulder motion, some limitation in dorsolumbar flexion and extension, and a 100° limitation in actual knee flexion. (R.326.) Although he noted that the plaintiff exhibited a depressed mood, he also found him to be fully oriented and to exhibit normal cognition, memory, attention, concentration, and judgment. (R.327.)

With essentially the same basic neck pain complaint without any associated numbness, weakness or incontinence, in September and again in October 2007 the plaintiff was seen in the emergency room at RMH. (R.334-341.) On each occasion it was noted that the plaintiff's only current medications were antidepressants (Wellbutrin and Effexor). (R.334,337.) On each occasion his weight was stable at 260 lbs.; on each occasion he was generally well-appearing and in no acute distress, and on each occasion the clinical examination identified no medically significant abnormality. (R.334-335,337-339.) A series of six cervical X-rays in September reconfirmed the "stable" post-surgical, cervical changes, and they demonstrated no other significant abnormality. (R.336.) Similarly, chest X-ray series in October disclosed no pulmonary or cardiac abnormality. (R.340-341.)

During the administrative consideration of the plaintiff's applications, his medical records were separately reviewed and summarized by state agency psychological and medical consultants in February 2007. (R.263,266,295-309,267-272,333.)

In the medical consultant's assessment, he took specific note of the absence of any medically identified motor or sensory abnormality and of the fact that X-ray studies had demonstrated both normal cervical alignment and fusion and only "mild" degenerative cervical changes. (R.272.) After additionally taking note of the plaintiff's medical history, the character of his symptoms, his self-described activities and the absence of any medically significant postural or manipulative limitations, the medical consultant concluded that the plaintiff retained the functional ability to perform work at a light exertional level. (R.267-272.) And after a similar re-analysis in June 2007, a second medical reviewer reached the same conclusions. (R.333.)

In the psychological consultant's assessment, he noted that the record contained nothing to suggest that the plaintiff's memory was not fully intact or that the plaintiff was not capable of performing the basic mental demands required to perform work activities in a normal work environment. (R.265.) As part of his analysis, the psychological reviewer also found the August 2006 report of Dr. Gaddis to be "well-supported" and entitled to "great weight." (*Id*.) Based on this review, the psychological consultant concluded that the record demonstrated the plaintiff to have only "mild" daily living and social functioning restrictions, to have only "moderate" difficulties maintaining concentration, persistence and pace, and to be able to meet the basic demands of competitive work on a regular and sustained basis. (R.263,265,306.)

9

*Inter alia* the plaintiff testified at the hearing that his most recent employment had been as a dock worker at Wetsel Seed Company. (R.39-40.) He worked there for approximately two years before quitting in November 2006. (*Id*.) Since then, he testified, he had gained d 40-50 pounds and at the time of the hearing weighed "right around" 300 lbs. (R.38-39.) At the time of the hearing he was not taking any pain medication with the exception of aspirin, and he had not seen a doctor for treatment of any physical condition for more than one year because he "[couldn't] afford the bills." (R.41-42,46.)

Appearing as a vocational witness, Andrew Beale, PhD, also testified at the hearing. (R.50-54,102-103.) Responding to a hypothetical question, Dr. Beale opined that an individual with the plaintiff's vocational profile and having the functional limitations identified by the state agency medical and psychological consultants would be able to perform a range of light and sedentary unskilled work on a regular and sustained basis, including jobs in the poultry industry, such as poultry processor, or in the laundry industry, such as sorter, grader or bagger. (R.52-53.)

**IV.     Analysis**

In this appeal the plaintiff's contends that the ALJ's hypothetical question to the vocational witness "unfairly portray[ed]" his abilities and "did not fully conform to the medical evidence." As support for this contention he argues that the ALJ failed to acknowledge his significant limitations of daily living due to his chronic depression and anxiety associated with his constant pain, which

he described both in his testimony [8] and in his various responses to the agency's pain and daily activities questionnaires. [9] Likewise, he argues that the ALJ failed to acknowledge the multiple functional limitations associated with Dr. Gaddis' observations and mental examination, including the plaintiff's psychological dependence, paranoid personality traits, anger management issues, and generalized feelings of helplessness. [10]

A review of the ALJ's findings and evaluation of the evidence, including the hypothetical question he posited to the vocational witness, fail to support this contention. At the final decisional step in this case, the Commissioner had the burden of providing evidence of a significant number of jobs in the national economy that the plaintiff could physically and mentally perform. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). The primary purpose, therefore, of having vocational testimony in the instant case was to assist the ALJ in meeting this requirement. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). Thus, for such testimony to be decisionally relevant, it must be in response to a proper hypothetical question which fairly set out all of claimant's functionally relevant impairments. *Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005). Nevertheless, an ALJ has discretion in framing a hypothetical question as long as it is supported by substantial evidence in the record, and it needs only to reflect those impairments which are supported by the record. *See Russell v. Barnhart*, 58 Fed. Appx. 25, 30 (4th Cir. 2003) (unpublished) (holding that while an ALJ's

---

[8] For example, in his hearing testimony the plaintiff described having constant pain at a level of "eight or nine" on a scale of zero to ten, which was neither relieved by rest or moving-around. (R.39,43,48.)

[9] In his pain questionnaire and in his daily activities report, the plaintiff described his functional difficulties bending or reaching due to neck pain, or using his hands and arms due to arthritic pain, or standing due to "deteriorating knee caps," or any activity due to the "stress and tension" brought-on by his aches and pains. (R.153, 155-157.)

[10] *See* R.203-205.

11

hypothetical question must fairly set out all of a claimant's impairments, it need only to reflect impairments supported by the record and may omit any non-severe impairments); *France v. Apfel*, 87 F. Supp.2ᵈ 484, 490 (DMd, 2000) (citing *Martinez v. Heckler*, 807 F.2ᵈ 771,774 (4ᵗʰ Cir. 1986) for the proposition that an ALJ is free in his hypothetical question to reject limitations suggested by a claimant's attorney); *see also Swaim v. Califano*, 599 F.2ᵈ 1309, 1312 (4ᵗʰ Cir. 1979).

In assessing the severity of the plaintiff's mental limitations, the ALJ in the instant case expressly took into account the four broad areas of functional limitations outlined in 20 C.F.R. §§ 404.1520a(c)(3) and 416.920a(c)(3). [11] (R.17.) He concluded that the plaintiff's mental impairments only "mildly" restricted his activities and social functioning, that they only "moderately" limited his concentration, persistence and pace, that they had caused no instances of decompensation, and that these conclusions were consistent with those of the state agency psychiatric reviewer. (R.18.)

In finding that plaintiff retained the ability to perform a range of "light work," [12] the ALJ in this case also plainly rejected the plaintiff's testimony and related statements about the extent of his pain and associated subjective limitations. In doing so, the ALJ followed the agency's assessment process to determine at step-one that the objective medical evidence demonstrated the plaintiff to

---

[11] The include: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.

[12] "*Light work* involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b) and 416.967(b).

have an underlying medical condition that could be expected to cause pain and his related symptoms and to determine at step-two that the same objective evidence did not support the plaintiff's statements about the intensity, persistence, or limiting effects of his pain or other subjective symptoms. (R.18-210.) In addition to basing these findings on his review and assessment of the objective medical record, including the diagnostic and laboratory finding, the ALJ also took into account the opinions of the state agency reviewers. (R.21.) He specifically found these physical and mental functional capacity assessments to be "well-supported" in the medical record and "not inconsistent" with substantial evidence, and he incorporated both in the hypothetical question he posited to the vocational witness. (R.2,52.)

In summary, therefore, the ALJ's decision denying a period of disability benefits to the plaintiff was supported by substantial evidence. *Inter alia*, that substantial evidence included vocational testimony given in response to an appropriate hypothetical question. Likewise, it is supported by, and is consistent with, the conclusion by three separate state agency consultants [13] that the plaintiff retained the functional capacity to perform a limited range of light work.

## V.     Proposed Findings of Fact

As supplemented by the above summary and analysis and on the basis of a careful examination of the full administrative record, the undersigned submits the following formal findings,

---

[13] Pursuant to the agency's regulations, such consultants are deemed to be "highly qualified . . . experts in Social Security disability evaluation" whose findings the ALJ must consider as opinion evidence. 20 C.F.R. §§ 404.1527(f)(2) and 416.927(f)(2).

conclusions and recommendations:

1. All facets of the Commissioner's final decision are supported by substantial evidence;

2. The ALJ's hypothetical question to the vocational witness was properly formulated and fully based on substantial evidence in the record;

3. The vocational witness' response to the ALJ's properly formulated hypothetical question satisfied the Commissioner's step five burden;

4. The plaintiff has not met his burden of proving his entitlement either to a period of DIB or to SSI; and

5. The final decision of the Commissioner should be affirmed.

## VI. Recommended Disposition

For the foregoing reasons, it is RECOMMENDED that an order be entered AFFIRMING the final decision of the Commissioner, GRANTING SUMMARY JUDGMENT to the defendant, DENYING plaintiff's claim, and DISMISSING this case from the docket of the court.

The clerk is directed to transmit the record in this case immediately to the presiding district judge and to transmit a copy of this Report and Recommendation to all counsel of record.

## VII. Notice to the Parties

Both sides are reminded that, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within

fourteen (14) days hereof.  **Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties**.  Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

DATED:   this 3rd day of August 2010.

    /s/   *James G. Welsh*
United States Magistrate Judge